41 F.3d 1512
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elbert WILLIAMS, Petitioner-Appellant,
v.
Howard A. PETERS, III, Respondent-Appellee.
 No. 93-1026.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 18, 1994.*
Decided Oct. 20, 1994.
 
 Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Elbert Williams appeals the district court's denial of petitioner's petition for a writ of habeas corpus. 28 U.S.C. Sec. 2254. We affirm.
 
 FACTS
 
 2
 Petitioner was convicted on April 3, 1987 of two counts of murder in the Circuit Court of Cook County. Petitioner maintains that his conviction must be overturned because the court utilized the then current versions of the Illinois Pattern Jury instructions for murder and voluntary manslaughter based on an unreasonable belief defendant's actions were justified.[1] Petitioner maintains that the use of the instructions violated his right to due process of law.
 
 
 3
 After petitioner's conviction, the Illinois Supreme Court found the use of these murder and manslaughter instructions constituted "grave error" under state law because they erroneously placed the burden of proof regarding mitigating mental states on the defendant. People v. Reddick, 123 Ill.2d 184, 526 N.E.2d 141 (1988). This court subsequently found the same instructions violate due process because a jury could be left with the false impression it could convict of murder even if a defendant had a mitigating mental state. Falconer v. Lane, 905 F.2d 1129 (7th Cir.1990).
 
 
 4
 Petitioner appealed his conviction to the Illinois Appellate Court, arguing the defects in his jury instructions per Reddick. Petitioner raised Reddick issues in both his opening supplemental brief and reply brief in the Illinois Appellate Court. The Appellate Court affirmed his conviction on December 26, 1989, concluding any error due to the jury instructions was harmless. No due process issues were noted or addressed by the court. Petitioner filed a petition for rehearing, again challenging the jury instructions. This petition was denied on December 17, 1990. The Illinois Supreme Court denied petitioner's petition for review on October 2, 1991.[2] Petitioner filed his petition for a writ of habeas corpus on July 23, 1992. The district court, in a thorough opinion, denied the petition on the grounds petitioner did not fairly present his Falconer due process claim to the state courts and any error in using the jury instructions was harmless given the overwhelming evidence of guilt.
 
 ANALYSIS
 
 5
 This court recently decided a quartet of cases dealing with the issues of fair presentment and harmless error in Falconer rule cases. See Green v. Peters, No. 92-2856, slip op. (7th Circuit, September 23, 1994); Carter v. DeTella, No. 92-2978, slip op. (7th Circuit, September 23, 1994); Cuevas v. Washington, No. 92-3090, slip op. (7th Circuit, September 23, 1994); Rosa v. Peters, No. 92-3258, slip op. (7th Circuit, September 23, 1994).
 
 A. Fair Presentment
 
 6
 A petitioner must fairly present his federal issue to the state courts as a precondition to exhaustion of state remedies. Verdin v. O'Leary, 972 F.2d 1467, 1472-73 (7th Cir.1992). If the petitioner's argument to the state court did not: 1) rely on pertinent federal cases employing constitutional analysis; 2) rely on state cases applying constitutional analysis to a similar factual situation; 3) assert the claim in terms so particular as to call to mind a specific constitutional right; or 4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. Id. at 1473-74. Both the operative facts and controlling legal principles must have been presented to the state court. Id. at 1474.
 
 
 7
 This court must evaluate, "as a pragmatic matter," whether it is probable the state court was alerted to the federal claim by the petitioner. Id. at 1476. Further, spartan allegations that defendant did "not receive a fair trial" or cursory non-specific references to "due process" will generally not be deemed sufficient to alert the state court to the federal claim. Id. at 1475.
 
 
 8
 Petitioner argues that he fairly raised the Falconer rule issue in his briefs on direct appeal, his petition for rehearing, and his petition for review to the Illinois Supreme Court. As an initial matter, arguments raised in petitioner's briefs for the first time in petitions for rehearing to the state appellate court or petitions seeking discretionary review by the state supreme court are not deemed fairly presented (unless actually addressed by the state tribunals). See Verdin, 972 F.2d at 1479 n. 13 (citing Castille v. Peoples, 489 U.S. 346, 351 (1989) and Cruz v. Warden of Dwight Correctional Center, 907 F.2d 665, 669 (7th Cir.1990)).
 
 
 9
 Further, this court concurs with the district court that petitioner did not adequately raise the Falconer rule issue in his briefs to the Illinois Appellate Court. Both briefs are based on Reddick. A Reddick claim does not raise constitutional issues; Reddick has no federal constitutional basis because it is grounded solely in state law. Verdin, 972 F.2d at 1476 (citing Taylor v. Gilmore, 954 F.2d 441 (7th Cir.1992), rev'd on other grounds, 113 S.Ct. 2112 (1993), on remand, 4 F.3d 997 (1993) (Table)). See also Green, slip op. at 7-9; Carter, slip op. at 8-10; Cuevas, slip op. at 12-14. In addition, the limited references to "constitutional magnitude" and "constitutional dimension," coupled with the citation of federal cases used solely to support the Reddick-type burden of proof arguments, were not sufficient to fairly alert the state court of a federal constitutional issue.
 
 
 10
 This determination would normally indicate remand is appropriate to ascertain whether petitioner can demonstrate cause and prejudice for his failure to raise the issue in state court. See Green, slip op. at 8-9. However, a remand is not necessary because this court concludes any error was harmless.
 
 B. Harmless Error
 
 11
 Petitioner has focused on "hard dicta" in earlier decisions by this court to support his theory that Falconer error is inherently prejudicial and can never constitute harmless error. While acknowledging the dicta, this court has held that Falconer errors were always properly reviewable under the harmless error standard. Green, slip op. at 9-11 (citing cases). See also, Carter, slip op. at 12-13; Cuevas, slip op. at 15-16. An instructional error is harmless unless the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).
 
 
 12
 The district court based its conclusion on the findings of fact presented in the state appellate opinion, per 28 U.S.C. Sec. 2254(d). Petitioner has contested the facts found by the Illinois Appellate court and adopted by the district court. While most of petitioner's claims regarding the record, even if true, would be immaterial, this court has nonetheless reviewed a transcript of the petitioner's trial. While there was clearly Falconer error in this case, this court must conclude the error was harmless.
 
 
 13
 The evaluation of harmless error requires this court to make some limited credibility determinations in deciding the correct version of the facts. While such assessments are generally to be avoided by reviewing courts, it is appropriate in these types of cases, as Brecht requires the habeas court to evaluate the probability of a different outcome if the case was tried without the error. Carter, slip op. at 14; Cuevas, slip op. at 18.
 
 
 14
 The state's evidence against petitioner was substantial, and included both eye-witness and medical expert testimony. Nonetheless, petitioner claims that the Illinois Appellate court ignored and misconstrued "vital" evidence in the record. (Petitioner's Brief, p. 21). The matters challenged by the petitioner, however, are largely immaterial. For instance, petitioner challenges the conclusion a gunshot to the head was at "close range", pointing to medical testimony that allegedly conflicts with that conclusion. The medical testimony, however, only indicates the shot was fired from more than two feet away. (Petitioner's Brief, p. 7). A shot can be fired from more than two feet away and still be fairly considered fired at "close range". The claim that a shot through the temple cannot be deemed "execution-style" is similarly meritless. Further, the asserted impeachment of certain witnesses, regarding whether they testified the petitioner and the victims were seated "in" rather than "on" the car and other minor variances, is of limited significance. (Petition, p. 9). Further, petitioner's account of the shooting, which is supported only by his testimony, is farfetched and apparently completely disbelieved by the jury.
 
 
 15
 Petitioner maintains that the two victims had shot and severely wounded him a few weeks before he shot them. While petitioner had indeed been shot, petitioner never identified his assailants or pressed any charges. Further, petitioner maintains that on the night of the killing he and his girlfriend were abducted by the two victims, who were brandishing a "gunlike" object. No such object was located at the crime scene. Petitioner claims he and his girlfriend were forced to drive to the scene of the killing, where the two victims attempted to force petitioner into a building. Petitioner claims he resisted, and one victim reached into his pocket and brought out an object (presumably the "gunlike" object). Petitioner claims he then shot both victims in self-defense.
 
 
 16
 Being kidnapped and forced to drive at gunpoint, followed by being dragged into a building and threatened with what appears to be a firearm, would provide justification for the use of deadly force in self-defense. Further, even one of the above violent criminal acts could provide justification for the use of force in self-defense. The jury, by failing to acquit on the grounds of self-defense, clearly found not even a portion of the petitioner's story credible. See, Carter, slip op at 14-15; Cuevas, slip op. at 18-19. Further, petitioner's entire claim that he was only guilty of manslaughter based upon an unreasonable belief his actions were justified is based upon this same account the jury utterly rejected.
 
 
 17
 Finally, assuming the jury did believe it could convict petitioner of murder even if petitioner had an unreasonable belief his actions were justified, this court's review of the trial transcript indicates no rational jury could have been persuaded the defendant had such a belief. See Carter, slip op. at 15, Cuevas, slip op. at 19.
 
 
 18
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 The jury also received the instruction dealing with self-defense
 
 
 [2]
 As Falconer was decided during the pendency of petitioner's direct appeals, the retroactivity of the Falconer rule is not an issue. See Gilmore v. Taylor, 113 S.Ct. 2112 (1993) (reversing this court and holding the Falconer rule is a "new rule" and not to be applied retroactively)